418 A.2d 447

Clifford B. GRUBBS and Rose M. Grubbs, his wife, Appellants,

v.

Elizabeth DEMBEC, Administratrix of the Estate of Stanley Dembec, Deceased, Elizabeth Dembec, Individually and in the Estate of Stanley Dembec, Deceased.

Superior Court of Pennsylvania.

Argued April 10, 1979.

Filed Jan. 18, 1980.

Reargument Denied June 23, 1980.

Petition for Allowance of Appeal Denied July 28, 1980.

Charles D. Coll, Pittsburgh, for appellants.

James C. Larrimer, Pittsburgh, for appellees.

Before PRICE, HESTER and MONTGOMERY, JJ.

PRICE, Judge:

The instant case is again before this court on appellants' action for partition of real property. On appeal, appellants challenge the action of the trial court in modifying its decree nisi in accordance with appellee's exceptions. Finding appellants' challenge to be correct, we reverse and modify the order of the trial court.

The facts of this case involve an extensive course of litigation between the respective parties, and a more in-depth chronology of that litigation may be found at an earlier appeal to this court in *Grubbs v. Dembec*, 241 Pa.Super. 18, 359 A.2d 418 (1976). For purposes of this appeal, the following summary will suffice. On August 29, 1958, Stanley Dembec, now deceased, and his wife Elizabeth, appellee herein, conveyed a parcel of land in Allegheny County to the Grubbs. In conjunction with the conveyance, the Grubbs and Stanley Dembec orally agreed to establish a restaurant–tavern business on the premises. The business was established in November 1958 with the Grubbs having exclusive management of the operation. Eventually, disagreements arose between the parties, and on April 16, 1964, the Dembecs filed suit requesting a reconveyance, and either an accounting by the Grubbs for the profits derived from the restaurant–tavern business or a money judgment for the rental value of the premises during the time the Grubbs were in exclusive possession. After a hearing, the chancellor entered an adjudication on July 29, 1969, declaring the Grubbs to be trustees ex maleficio of a one–half undivided interest in the property, but denying the Dembecs' request for an accounting of profits; the chancellor made no mention of the request for rent. That decree was affirmed *per curiam* by the supreme court. *See Dembec v. Grubbs*, 443 Pa. 564, 278 A.2d 487 (1971). On July 16, 1971, as trustees pursuant to the decree, the Grubbs conveyed an undivided one–half interest in the real estate to the estate of Stanley Dembec.

On June 29, 1971, the Grubbs initiated an equity action for the partition of the real estate. A master was appointed

and the property was sold to the Grubbs under an exclusive sale agreement for a total consideration of $34,500. On May 19, 1975, the court ordered an equal distribution of the funds to both parties. After denial of exceptions, Elizabeth Dembec appealed to this court alleging that the chancellor erred in failing to deduct from the Grubbs' share an amount equal to the fair rental value of her one–half interest during the time the Grubbs were in exclusive possession dating from the decree of the court on July 29, 1969. This court agreed; and remanded for a hearing to determine the rental value that should be deducted from the Grubbs' distributive share and whether they should be credited with any expenditures made during this period. *See Grubbs v. Dembec, supra,* 241 Pa.Super. 18, 359 A.2d 418 (1976).

Upon rehearing, the chancellor received evidence regarding the rental value of the premises from the commencement of the Grubbs' exclusive possession on November 1, 1958, until the date of the entry of the decree of distribution on May 19, 1975. At the conclusion of the testimony, the chancellor entered a decree nisi in which he ordered a diminution in the value of the Grubbs' distributive share in the amount of $7,525. The court also granted the parties twenty days from the date on which they received notice of the decree nisi in which to file exceptions. Appellee filed exceptions in which she challenged the calculations of the trial court. On July 17, 1978, the court entered a final order in which it concluded that its calculations in the decree nisi were in error. The court stated that the decree nisi only deducted the rental value of appellee's interest from the date of the earlier decree on July 29, 1969, (in which appellants were declared trustees for the benefit of appellee) until the date of the decree of distribution on May 19, 1975, and that the deduction for rent should have been calculated from the date on which appellants assumed exclusive possession on November 1, 1958. The rental value of appellee's one–half interest from November 1, 1958, to May 19, 1975, was $20,236.50, and a final decree was entered on July 17, 1978, in which appellants' one–half share of the sale proceeds was diminished by this amount.

Appellants have appealed from the final decree and present two issues for resolution: (1) whether appellee's exceptions were timely; and (2) whether the trial court erred in decreeing a diminution in appellants' share of the proceeds of sale for the rental value of appellee's interest from the commencement of appellants' exclusive possession on November 1, 1958, until the order of the court on July 29, 1969.

■ Appellants' first assignment of error regarding the alleged late filing of exceptions is without merit. Appellants' complaint giving rise to the instant proceeding was brought as an action for the partition of real property. Under Pa.R.C.P. No. 1573(c) appellee had twenty days from the filing of the decree nisi in which to file exceptions. Although appellee did not file exceptions until twenty–one days subsequent to the filing of the decree nisi, we find no waiver by appellee since the decree nisi extended the date for the filing of exceptions until twenty days subsequent to the service of that decree upon the respective parties. Pa.R. C.P. No. 248 provides that "[t]he time prescribed by any rule of civil procedure for the doing of any act may be extended or shortened by written agreement of the parties or by order of court." Thus, although the record does not clearly establish the date on which appellee received the copy of the decree nisi, the trial court found that the exceptions had been timely filed within the time frame prescribed in the decree nisi.

■ Appellants' second assignment is that the chancellor erred in assessing them with the rental value of appellee's one–half interest from the date of appellants' exclusive possession on November 1, 1958, until the decree of the court declaring appellants to be trustees ex maleficio in July of 1969. Appellants contend that this court adjudged in an earlier appeal that their share of the sale proceeds was to be diminished only by the value of appellee's interest from the date of the July 29, 1969 decree until the date of distribution on May 19, 1975. We agree, and modify the order of the trial court accordingly.

As stated, in the initial proceeding brought by appellee's deceased husband in 1964, relief was requested both in the form of a constructive trust and for either an accounting by appellants for the profits derived from the operation of the establishment or for the rental value of appellee's interest during the time of appellants' exclusive possession commencing on November 1, 1958. The trial court on July 29, 1969, decreed a constructive trust, but denied the request for an accounting on the basis of the equitable doctrine of unclean hands. No mention was made of the request for rent, although since it was an alternative request in lieu of an accounting for profits, the court may have intended *sub silentio* to deny that item of recovery because of the unclean hands doctrine. The reason for the court's finding of unclean hands was that the transfer of property and the secret partnership agreement between appellants and Stanley Dembec was contrary to public policy, in that Stanley Dembec had an interest in appellee's beer distributorship and thus was precluded from maintaining an interest in an establishment possessing a retail liquor license such as the restaurant–tavern operated by appellants. *See* Act of April 12, 1951, P.L. 90, art. IV, §§ 436, 438, 47 P.S. § 4–436(e), 4–438(c). After entry of the July 29, 1969 decree, appellee filed exceptions raising the issue of the trial court's failure to address the issue of rent, but the exceptions were dismissed and the case affirmed per curiam.

In 1971, when appellants brought an action to partition the real estate, appellee filed an answer in which she joined in that request, but in addition, she requested a diminution in appellants' share in the amount of her rental interest from November 1, 1958. The trial court denied that request and reasoned that its July 29, 1969 decree, affirmed by the supreme court, was res judicata on the issue of rent. On appeal to this court, appellee abandoned her claim that she was entitled to rent from November 1, 1958, until July 29, 1969, and instead asserted that her right to receive rent did not even arise until July 29, 1969, when the court declared appellants as trustees ex maleficio in her behalf. This was

done in an obvious effort to avoid the claim that the July 29, 1969 decree was res judicata as to her claim for rent. On appeal to this court, appellee based her claim for rent exclusively upon the Act of June 24, 1895, P.L. 237, § 1, 68 P.S. § 101, which establishes the right of a tenant in common to receive a proportionate share of the rental value when another tenant in common is in exclusive possession of the subject property. Appellee reasoned that because her right to recover rent under the statute as a tenant in common did not arise until the July 29, 1969 decree declaring her a beneficiary of a trust, that decree could not be res judicata on her request for rent. This court agreed and stated,

"Certainly, a party seeking rent under this statute from a possessor of land must have an identifiable interest in said land as a tenant in common. Here, however, the appellant had no actionable right to receive rent from the Grubbs until the chancellor declared the Grubbs to be trustees ex maleficio of a one–half interest in the property in question. Thus, it is clear that the appellant's demand for rent in her complaint, and in her exceptions to the chancellor's decree, was improper. The appellant's right to receive rent arose when the chancellor filed his decree on July 29, 1969. Because the appellant's right of action arose when the chancellor's decree was filed, we cannot conclude that the decree also rendered this issue res adjudicata. We find instead that the doctrine of res adjudicata is simply inapplicable to the case at bar." *Id.*, 241 Pa.Super. at 25, 359 A.2d at 421–22.

On appeal, appellee now contends that our earlier decision regarding the right to recover rent only from July 29, 1969, was in error and that the rent should have been awarded from November 1, 1958. In essence, appellee wishes to revive a claim previously abandoned in an effort to avoid a dismissal on the basis of res judicata. If appellee had continued to assert in her prior appeal to this Court that she was entitled to recover the rental value of her interest from

November 1, 1958, on the basis of general trust principles [1] she would have confronted a heavy burden in explaining why the July 1969 decree of the trial court was not res judicata on that claim. Although not specifically addressing the issue of rent, the July 29, 1969 decree did not grant that

1.  In the instant case, the chancellor adjudged appellants to be trustees ex maleficio for the benefit of appellee. Under Pennsylvania jurisprudence, a trust ex maleficio is declared when a party acquires property by means of fraud or misrepresentation, *see, e.g., Hamberg v. Barsky*, 355 Pa. 462, 50 A.2d 345 (1947); *Rice v. Braden*, 243 Pa. 141, 89 A. 877 (1914); *Barry v. Hill*, 166 Pa. 344, 31 A. 126 (1895), and is equivalent to the imposition of a constructive trust. *See Murphy v. Landsburg*, 58 F.R.D. 165 (E.D.Pa.), *aff'd*, 490 F.2d 319 (3d Cir. 1973), *cert. denied*, 416 U.S. 839, 94 S.Ct. 1941, 40 L.Ed.2d 289 (1974); *Turney v. McKown*, 242 Pa. 565, 89 A. 797 (1914); *Sherman v. Herr*, 220 Pa. 420, 69 A. 899 (1908). Although a constructive trust may not be judicially decreed until many years subsequent to the transaction giving rise to the trust, the accepted theory is that the constructive trust is in existence at the inception of the transaction, *see Turney v. McKown, supra*; Scott, The Law of Trusts § 462.4 (1967), and the beneficiary is possessed with an equitable interest in the trust property prior to the declaration of the constructive trust. *Id.* at §§ 462.4, 462.5.

   A trustee under an express trust occupies a fiduciary position with respect to the cestui que trust and is under an obligation to deal fairly in administering trust assets. If a trustee utilizes real property which is the res of an express trust, he may be required to reimburse trust beneficiaries for the fair rental value from the time of his initial occupancy. *See Anderton v. Patterson*, 363 Pa. 121, 69 A.2d 87 (1949); *Landis v. Scott*, 32 Pa. 495 (1859); *Meyer Estate*, 173 Pa.Super. 592, 98 A.2d 444 (1953). Whether the same rule should be applied in the case of a constructive trustee for his use of the trust property prior to the declaration of a constructive trust is not as clear, since it may be inequitable to charge a trustee with his use of the property during a time he did not realize that he was a constructive trustee. In *Buchanan v. Brentwood Federal Savings & Loan Assoc.*, 457 Pa. 135, 320 A.2d 117 (1974), the supreme court held that a trustee under a constructive trust will not be held to the same standards as a trustee under an express trust agreement. The test is whether the trustee would be unjustly enriched by the retention of any benefit derived from the use of the trust res. Therefore, because appellee had an equitable interest in the trust res prior to July 29, 1969, she was also invested with an equitable claim for the recovery of rent prior to that time under general trust principles of unjust enrichment. Although her statutory right to claim the rental value of her interest did not arise until the entry of the July 29, 1969 decree of the trial court, her equitable right to assert a claim for such rent under an unjust enrichment theory existed prior to that date. It is this latter claim that appellee abandoned in her earlier appeal to this court.

requested relief and appellee's exceptions raising the rent issue were dismissed and the judgment affirmed by the supreme court. Thus, in the earlier appeal to this court appellee abandoned her claim for rent under general trust principles and limited her right of recovery under the Act of 1895. Having limited her claim to that provision, appellee may not recover the rental value of her one–half interest prior to July 29, 1969.

Accordingly, the order of the trial court is reversed, and the share of appellants' proceeds from the sale of the premises is to be diminished by the amount of $7,525, which represents the fair rental value of appellee's interest from July 29, 1969, until the decree of distribution on May 19, 1975.[2]

HESTER, J., files a dissenting statement.

HESTER, Judge, dissenting:

I dissent. I would affirm on the Opinion of Judge Barry of the court below.

---

2. We note that in the July 17, 1978 final decree, the trial court awarded interest from the date of the judgment on July 29, 1969. The allowance of interest from this date has not been challenged by either party, and we deem it to be a proper award.