In re Gary D. LEITNER, Debtor.

Carl R. Clark, Trustee, Plaintiff,

v.

Leo G. Wetherill and L.G.W. Energy
Resources, Inc., Defendants.

Bankruptcy No. 93–20723–7.
Adversary No. 95–6004.

United States Bankruptcy Court,
D. Kansas,
Kansas City Division.

March 11, 1999.

Lentz & Clark, P.A., Overland Park, Kansas, for Carl R. Clark.

William S. Robbins, Jr., Kurlbaum, Stoll, Seaman, Reefer, Suter & Mustoe, P.C., Kansas City, Missouri, for Leo G. Wetherill and L.G.W. Energy Resources, Inc.

Eric C. Rajala, Overland Park, Kansas, for Debtor Gary D. Leitner.

## MEMORANDUM OPINION [1]

JOHN T. FLANNAGAN, Bankruptcy Judge.

This case is about constructive trusts in bankruptcy. In 1986, Leo G. Wetherill hired Gary D. Leitner to perform legal and accounting services for L.G.W. Energy Resources, Inc., Wetherill's closely held company. Between 1986 and 1992, Leitner embezzled a large sum of money from L.G.W. Energy Resources, Inc.[2] Leitner put some of the purloined funds into a new home for himself and his wife. When Wetherill discovered the fraud in 1992, he (and his company) sued the Leitners, alleging Leitner's fraud created a constructive trust. To guard against Leitner conveying away the home, Wetherill also obtained a prejudgment attachment against it. Leitner filed Chapter 7 bankruptcy and the trustee, Carl Clark, brought this adversary proceeding contesting the existence of a constructive trust and seeking to avoid the attachment as a transfer subject to his avoiding powers. Mr. Clark now seeks summary judgment on the undisputed facts. The Court denies Mr. Clark's motion for summary judgment because Wetherill and L.G.W. are the beneficiaries of a constructive trust on the home, which

---

1. Plaintiff Carl R. Clark, Trustee, appears by his counsel, Lentz & Clark, P.A., Overland Park, Kansas. Defendants Leo G. Wetherill and L.G.W. Energy Resources, Inc., appear by their attorney, William S. Robbins, Jr., of Kurlbaum Stoll Seaman Reefer Suter & Mustoe, P.C., Kansas City, Missouri. Debtor Gary D. Leitner appears by his attorney, Eric C. Rajala, of Overland Park, Kansas.

2. In the transcript of Leitner's criminal case, the prosecutor alleged the amount to be nearly $1,000,000.00.

prevents the home from becoming property of the estate.[3]

## Background

Wetherill sued Leitner in the District Court of Johnson County, Kansas, on November 20, 1992. His original petition sought monetary and injunctive relief. But on February 26, 1993, he amended the petition. The amended petition sought a constructive trust on a home at 15623 Acuff Lane in Olathe, Johnson County, Kansas, that Leitner had allegedly purchased with the embezzled funds. Wetherill also asked for a prejudgment attachment of the home, which he received by order dated March 5, 1993. He recorded the attachment order with the Register of Deeds of Johnson County, Kansas, on March 8, 1993.

Although at first Leitner resisted Wetherill's suit, he later admitted his fraud in his answer and filed an affidavit confessing his wrongdoing. Hoping for entry of a prompt judgment, Wetherill's counsel prepared a journal entry and delivered it to the state court judge, the Honorable Lawrence E. Sheppard. Before Judge Sheppard could sign the journal entry, however, Leitner filed this Chapter 7 bankruptcy case on April 15, 1993.

Carl R. Clark was appointed interim trustee, and Wetherill (and his company) moved for relief from the automatic stay to permit entry of judgment in state court. Carl Clark objected, but on October 28, 1993, the Court ordered the automatic stay lifted to allow Wetherill and L.G.W. to proceed in state court:

1. The Motion for Relief from Automatic Stay filed by Leo G. Wetherill and L.G.W. Energy Resources, Inc., is granted. The stay is lifted to allow Leo G. Wetherill and L.G.W. Energy Resources, Inc., to proceed with all issues

and claims against the Debtor in Case No. 92 C 13357, entitled *Leo G. Wetherill, individually and as trustee of L.G.W. Energy Resources, Inc., a Kansas corporation, versus Gary D. Leitner, a Kansas resident; Oak Ridge Homes, Inc. a Kansas corporation; Heartland Homes, Inc., a Kansas corporation; Karen S. Leitner, a Kansas resident; Parkway Bank, a Kansas banking corporation; and Bank IV Kansas City, N.A., a national banking corporation,* which is currently pending in the District Court of Johnson County, Kansas. Under the federal doctrine of comity, this court abstains from ruling on the issues before the state court, and recognizes that court's authority to rule on those issues which include, but are not limited to, the constructive trust claimed by Leo G. Wetherill and L.G.W. Energy Resources, Inc., against property which the debtor alleges that he owns. The Trustee's Objection to the Motion for Relief from Automatic Stay is overruled.

. . . .

IT IS SO ORDERED on the day and date set forth above.[4]

As the order reflects, not only did the Court lift the stay, it also abstained from considering the constructive trust issue pending before the state court.

Mr. Clark did not appeal the Court's order, nor did he defend Wetherill's state court action against Leitner. Rather, he agreed with Wetherill and other interested parties to sell the residence, pay off the mortgages against it, and hold the remaining sale proceeds pending further litigation. The residence ultimately sold for $410,000. From the sale proceeds, Clark disbursed $272,627.42 to Farm & Home Savings to discharge its first mortgage and $75,000.00 to Mark Twain Kansas Bank to

---

3. The Court finds that this adversary proceeding is core under 28 U.S.C. § 157 and that the Court has jurisdiction under 28 U.S.C. § 1334 and the general reference order of the District Court effective July 10, 1984 (D. Kan. Rule 83.8.5).

4. Journal Entry filed November 29, 1993, at 1–2.

discharge its second mortgage. Clark is currently holding the balance of the proceeds of $67,285.44 plus accrued interest.

On April 16, 1996, before this Court could address Mr. Clark's summary judgment motion, Judge Sheppard, freed from the automatic stay, signed the journal entry confessing judgment that Wetherill's counsel had previously submitted.[5] The journal entry of judgment declared that Leitner held the residence in constructive trust for Leo G. Wetherill and L.G.W. Energy Resources, Inc.

Mr. Clark has stipulated in the pretrial order that Leitner purchased the home at 15623 Acuff Lane, Olathe, Kansas, with money stolen from L.G.W. Energy Resources, Inc.

### Discussion

One solution to this problem is that the constructive trust issue has been decided. Relying on the state court's issuance of a prejudgment attachment of the home, this Court abstained from considering the constructive trust question and lifted the automatic stay.

■ Although the state court did not enter final judgment until after the bankruptcy case was filed, it did grant a prejudgment attachment against the home. The prejudgment attachment was sufficient judicial action to recognize Wetherill's equitable interest in the home, which Leitner held in constructive trust. Presumably, since prejudgment attachments are not granted lightly, the court based the attachment on Leitner's affidavit confessing his wrongdoing and on the admissions in his answer. This prebankruptcy activity was sufficient to establish the constructive trust. The state court, freed from the stay, has decided the trust question in Wetherill's favor postbankruptcy.

■ Another solution considers whether a bankruptcy court should ever impose a constructive trust based on state law when a state court has not done so before a debtor has filed a bankruptcy. In 1994, the Sixth Circuit answered this question negatively in *XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.).*[6] The Court observed: "[A] constructive trust is fundamentally at odds with the general goals of the Bankruptcy Code."[7] The decision held that a constructive trust is an equitable remedy that is effective only from the entry of a final judgment. Hence, if a debtor files bankruptcy before a state court imposes a constructive trust on specific property, no constructive trust exists to prevent that property from becoming property of the bankruptcy estate.

The *Omegas* view has not been universally accepted, however. In a recent article, Andrew Kull criticized the *Omegas Group* decision as misunderstanding the historical roots of constructive trust law as a branch of restitution law.[8] A bankruptcy court in Maine concluded: "Properly applied, constructive trust theory does not conflict with the Code's distribution scheme."[9] And a Virginia bankruptcy judge announced:

> Omegas notwithstanding, I can only conclude that the concept of constructive trust is not inherently incompatible with the fair treatment of creditors in bankruptcy. I further find that it is within the discretion of the bankruptcy court to allow a constructive trust claim that is

---

5. Apparently, Judge Sheppard postponed signing the journal entry of judgment because Leitner, by this time imprisoned for his crime, requested to amend his affidavit in the civil case. Perhaps Leitner's incarceration accounts for the delay.

6. *XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.),* 16 F.3d 1443 (6th Cir.1994).

7. *Id.* at 1451, quoting Judge Aspen of the Northern District of Illinois in *The Oxford Organisation, Ltd. v. Peterson (In re Stotler and Co.),* 144 B.R. 385, 388 (1992).

8. Andrew Kull, *Restitution in Bankruptcy: Reclamation and Constructive Trust,* 72 Am. Bankr L.J. 265 (1998).

9. *In re Reider,* 177 B.R. 412, 415 (Bankr. D.Me.1994).

otherwise compatible with applicable state property law.[10]

■ Under state constructive trust law generally, if a wrongdoer obtains property by fraud or other improper means, a court can impose a constructive trust to protect the injured party. The constructive trust is a legal fiction that adopts the analogy of a trust and declares that a beneficiary owns an equitable interest in property. The constructive trust imposes a duty on the trustee to hold the equitable property interest in trust for its owner, the beneficiary.

■ When a debtor has been declared a constructive trustee before filing a petition in bankruptcy, there is no problem. The beneficiary's equitable interest in the property does not enter the bankruptcy estate. This is so because the equitable interest held in constructive trust for the beneficiary is not property of the debtor. Under § 541(a), the commencement of a bankruptcy case creates an estate that includes all legal and equitable interests of the debtor in property wherever located as of the date the case is commenced. And under section § 541(d), property in which the *debtor holds no equitable interest*, because he holds it in trust for the beneficiary, does not enter the bankruptcy estate. Only the bare legal title to the property held by the debtor enters the bankruptcy estate, and the debtor/constructive trustee holds that legal title subject to a duty to convey it to the beneficiary of the constructive trust. The beneficiary's equitable interest does not become property of the estate.

But when a debtor has not been declared a constructive trustee before filing a petition in bankruptcy, there is a problem. The problem involves the status of state law on when a constructive trust becomes effective. The majority rule on this question is announced by the Pennsylvania bankruptcy court in *Electric M & R, Inc. v. Aultman:*

> "Although a constructive trust may not be judicially decreed until many years subsequent to the transaction giving rise to the trust, the accepted theory is that the constructive trust is in existence at the inception of the transaction, . . . and the beneficiary is possessed with an equitable interest in the trust property prior to the declaration of the constructive trust." [11]

Thus, under the majority state law rule, a constructive trust arises at the time of the occurrence of the events giving rise to the duty to reconvey the property, not at the date of final judgment declaring the trust as *Omegas* held.[12]

When bankruptcy intervenes before a constructive trust is imposed by a state court and the bankruptcy court finds a constructive trust by applying state law, the bankruptcy court's judgment is effective back to the date of the wrongful conduct. The injured party is deemed the equitable owner of the property and his equitable interest does not pass into the bankruptcy estate. The majority rule as it operates in bankruptcy is premised on an idea expressed by Justice Black in a case under the 1898 Bankruptcy Act: "The

---

**10.** *Old Republic Nat'l Title Ins. Co. v. Tyler (In re Dameron)*, 206 B.R. 394, 400 (Bankr. E.D.Va.1997)(*aff'd on other grounds*, 155 F.3d 718 (4th Cir.1998)).

**11.** *Electric M & R, Inc. v. Aultman (In re Aultman)*, 223 B.R. 481, 482 (Bankr.W.D.Pa. 1998) (quoting the Pennsylvania case of *Grubbs v. Dembec*, 274 Pa.Super. 362, 418 A.2d 447, 451 n. 1 (1980)).

**12.** *Curtis Mfg. Co., Inc. v. Plasti–Clip Corp.*, 933 F.Supp. 94 (D.N.H.1995); *U.S. Dep't of*

*Energy v. Seneca Oil Co. (In re Seneca Oil Co.)*, 906 F.2d 1445 (10th Cir.1990); *In re Reider*, 177 B.R. 412 (Bankr.D.Me.1994); *Old Republic Nat'l Title Ins. Co. v. Tyler (In re Dameron)*, 206 B.R. 394 (Bankr.E.D.Va.1997) (*aff'd on other grounds*, 155 F.3d 718 (4th Cir.1998)); *Electric M & R, Inc. v. Aultman (In re Aultman)*, 223 B.R. 481 (Bankr.W.D.Pa.1998); *see also* Andrew Kull, *Restitution in Bankruptcy: Reclamation and Constructive Trust*, 72 AM. BANKR. L.J. 265 (1998).

Bankruptcy Act simply does not authorize a trustee to distribute other people's property among a bankrupt's creditors." [13]

So far as this Court's research has shown, no Kansas case has ruled on whether a constructive trust is effective from the "inception of the transaction" rather than from the date of entry of a final judgment declaring the trust. Since state law controls this question,[14] and the Kansas courts are silent on this point, this Court must predict what the highest court of the state would rule if presented with the question. In making this prediction, according to a leading authority, a bankruptcy judge must follow the lead of the federal courts in diversity jurisdiction cases:

> In divining and applying the law of the forum state in diversity of citizenship cases, each federal court—whether it be a district court or an appellate court—functions as a proxy for the entire state court system, and therefore must apply the substantive law that it conscientiously believes would have been applied in the state court system, which includes the state appellate tribunals. In other words, the federal court must determine issues of state law as it believes the highest court of the state would determine them, not necessarily (although usually this will be the case) as they have been decided by other state courts in the past.[15]

■ Following the usual practice of ruling based on other state court decisions, this Court predicts that Kansas would follow the majority rule if faced with circumstances that would otherwise result in fraud being successfully perpetrated on an innocent party. Kansas, of course, has long recognized fraud as grounds for imposing a constructive trust.[16] Here, Leit-

ner has admitted his fraud. And Carl Clark's stipulation in the pretrial order satisfies the requirement that the misappropriated money be traceable to the home. The facts of this case leave no doubt that a constructive trust is equitably justified under Kansas law. The only doubt is whether the highest court of the state would adopt the "relation back" rule to prevent the fraud. The Court has found nothing in the Kansas cases to indicate that the Kansas Supreme Court would do other than apply the majority rule to do justice.

The Court therefore holds that Wetherill owned the equitable interest in the residence on the date Leitner filed bankruptcy. Leitner held only bare legal title to the property, which he was obligated to convey to Wetherill and his company. This being the case, the equitable interest in the home was owned by Wetherill, and that interest was not Leitner's property when he filed bankruptcy. Consequently, it did not become property of the estate, *a fortiori* the home's proceeds are likewise not property of the estate.

■ Mr. Clark has argued that his § 544(a) strongarm powers permit him to avoid the constructive trust. But he does not qualify under that statute's terms as either a judicial lien creditor or a bona fide purchaser on the date of bankruptcy. Under the Kansas *lis pendens* statute,[17] third persons, such as the trustee, were charged with notice of the pendency of Wetherill's state court constructive trust action. Furthermore, recording the prejudgment attachment order with the Johnson County, Kansas, Register of Deeds provided constructive notice. These filings prevent the trustee from claiming on the date of bankruptcy the status of the hypothetical statu-

---

13. *Pearlman v. Reliance Ins. Co.*, 371 U.S. 132, 135–36, 83 S.Ct. 232, 234, 9 L.Ed.2d 190 (1962).

14. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

15. 19 Charles Alan Wright, et al., Federal Practice And Procedure § 4507, at 126–30 (2ed.1996) (footnote omitted).

16. *Kahm v. Klaus*, 64 Kan. 24, 67 P. 542 (1902).

17. K.S.A. § 60–2201(a).

tory entities that could otherwise establish priority under § 544(a).[18]

■ Mr. Clark has also argued that § 547(b) operates to avoid the constructive trust and the attachment lien as preferential transfers. These arguments lack merit because neither the trust nor the attachment were a "transfer of an interest of the debtor in property."[19] Section 547(b) requires a transfer by the debtor before it can operate. The constructive trust was not a transfer by the debtor. The debtor did not own any equitable interest in the home that he could transfer. Although the prejudgment attachment is normally viewed as creating a lien, in this instance it was merely an enforcement tool to protect Wetherill's already existing equitable ownership in the home. It did not transfer any equitable interest from the debtor because Wetherill already held the equitable ownership of the home.

The trustee's motion for summary judgment is denied. The trustee is ordered to convey the bare legal title to Wetherill forthwith.

IT IS SO ORDERED.

---

**18.** 2 Epstein et al., Bankruptcy § 6–61 at 129, n. 74 (1992); *see also Saghi v. Walsh (In re Gurs),* 27 B.R. 163, 165 (9th Cir. BAP 1983).

**19.** *Electric M & R, Inc. v. Aultman (In re Aultman),* 223 B.R. 481, 485 (Bankr.W.D.Pa. 1998); *Wind Power Sys., Inc. v. Cannon Fin. Group, Inc. (In re Wind Power Sys., Inc.),* 841 F.2d 288, 291 (9th Cir.1988) ("An exchange that does not take value away from the debtor's estate cannot be a transfer within the reach of section 547"); *Mitsui Mfrs. Bank v. Unicom Computer Corp. (In re Unicom Computer Corp.),* 13 F.3d 321, 324 ("[S]omething held in trust by a debtor for another is neither property of the bankruptcy estate under section 541(d), nor property of the debtor for purposes of section 547(b)"). Mr. Clark also argues that § 547(b) avoids the lis pendens, but the Court will not address this argument because a lis pendens is merely a notice, not a transfer.